## NEWCOMBE *et al. v.* CHICAGO & N. W. RY. CO. *et al.*

### (*Supreme Court, General Term, First Department.* January 10, 1890.)

**1. ACTION—MISJOINDER OF CAUSES.**
    A complaint in an action by the pledgees of bonds, which alleges that they had become such for full value, in good faith, and before maturity; that the executors of an estate served notice on the makers that the bonds belonged to their testator's estate, from which they had been wrongfully abstracted by the pledgeor; and that by reason of the notice the maker refused to recognize the pledgees' interest; and which prays that the pledgees' title to the bonds may be adjudged, that the maker may be required to register the bonds in the name of the pledgees, and that the executors may be adjudged to have no right or title against the pledgees,—is not bad for a misjoinder of causes of action, since the alleged facts are all parts of one continuing transaction.

**2. PLEDGE—ACTIONS—PARTIES.**
    Though the bonds are payable to bearer, and title vests by delivery, yet the pledgeor is a necessary party to an action in which the pledgees ask that they be declared the owners of the bonds, as he has a right of redemption by the payment of the indebtedness secured by the bonds, and has also an interest in the balance remaining after payment of the lien.

**3. EXECUTORS AND ADMINISTRATORS—ACTIONS—MISJOINDER.**
    A complaint is bad which unites a demand for damages arising from the individual acts of defendants with a demand for damages arising from their misconduct as executors, as this combination would necessarily involve punishment for acts done both in their individual and representative capacity, though the rules by which their responsibility would be determined are different.

Appeal from special term, New York county.

Action by Isaac B. Newcombe & Co. against the Chicago & Northwestern Railway Company and others. The court overruled the several demurrers of the defendants Bloodgood and Lottimer, and they appeal.

The allegations of the complaint, necessarily admitted by the demurrer, establish the following facts: The plaintiffs, Messrs. I. B. Newcombe & Co., are stock-brokers, doing business in the city of New York, and as such brokers, in the usual course of business, in June, 1887, made cash advances to a large amount to one Jerome L. Hill, upon the pledge by him to them of certain negotiable securities, then in his actual possession and apparent ownership, among which were 50 bonds of the Chicago & Northwestern Railway Company known as "5 per cent. 25 years' debentures of 1909," of $1,000 each. These bonds were all coupon bonds, payable to bearer, and passing by delivery in the market, from hand to hand. They were pledged as security for any and all indebtedness which should be created or exist from Hill, the pledgee, to plaintiffs' firm. After such pledge, and prior to July 1, 1887, Hill, the pledgeor, became indebted to plaintiffs' firm in the sum of $52,517.38. Plaintiffs thereupon sold certain of the securities so pledged by him, including 3 of the said debenture bonds, and applied the proceeds of sale on account of his debt. Plaintiffs continued to hold the remaining 47 debenture bonds, and, after applying the proceeds of sale of the other securities, there remained due and owing to them from Hill the sum of $48,338.35, and interest from August 8, 1887. In July, 1887, Hill became and has ever since been wholly insolvent. The plaintiffs took the said debenture bonds in the usual course of business, in good faith, before maturity, and without any knowledge or notice of any interest or title, or claim of interest or title, in respect to them by or on behalf of any person or persons other than Hill, or that he was not the sole owner of all said bonds, and entitled to sell or pledge or otherwise dispose of them. Late in July, 1887, or early in August, 1887, the defendants Bloodgood and Lottimer published notices in newspapers in the city of New York, and delivered notices to the New York Stock Exchange, and to the defendant the Chicago & Northwestern Railway Company, claiming that the said bonds had been tortiously and wrongfully abstracted from the estate of William Lottimer, deceased, by Hill, who was, with them, one of

the executors of the will of said Lottimer, and that they, as executors, were the lawful owners of the bonds. On August 4, 1887, the defendants Bloodgood and Lottimer, as executors, commenced an action of replevin against Messrs. I. B. Newcombe & Co., the plaintiffs herein, who appeared by attorneys, and demanded a copy of the complaint, August 22, 1887. Bloodgood and Lottimer, under various pretexts, obtained extensions of time to serve their complaint until November 17, 1887. I. B. Newcombe & Co., within 11 days thereafter, (on November 28, 1887,) answered the complaint in the replevin suit, denying the claim of the plaintiffs therein, and alleging their lawful title to the bonds. The replevin suit being thus at issue, November 28, 1887, Messrs. I. B. Newcombe & Co. applied to the court to set it down for trial as a preferred cause, the sole plaintiffs being executors, and it was set down for trial for December 15, 1887. The executors, by various pretenses and excuses, succeeded in postponing the trial from time to time, although I. B. Newcombe & Co. were ready with their witnesses, until March 19, 1888, when they professed to be ready for trial; but on the next day, when the case was called, they made default, and judgment of dismissal and for costs was entered against them. In the mean time plaintiffs presented the coupons maturing November 1, 1887, to the defendant the Chicago & Northwestern Railway Company for payment, which was refused on the sole ground of the notice and claim of the Lottimer executors. On March 21, 1888, after the executors' replevin suit had been dismissed, plaintiffs demanded of the Chicago & Northwestern Railway Company to register the bonds in their name, pursuant to the contract provision for registry contained in the bonds, offering to surrender the coupon bonds and the coupons yet to mature; this being the right of plaintiffs, as the holders of the bonds, according to their terms. The railway company wrongfully refused this demand, again on the sole ground of the notice and claim of the Lottimer executors. The above acts and proceedings of Bloodgood and Lottimer were not in good faith, but were wrongful, and solely for the purpose of creating doubt as to plaintiffs' title, and to deprive the plaintiffs of the beneficial use of their property; and the defendants have prevented plaintiffs from availing themselves of the bonds in their business, or selling them, and applying the proceeds on the debt of Hill, or dealing with them in any way. The complaint prays relief that the plaintiffs' title to the bonds may be adjudged; that the defendant railway company may be required to register the bonds in the name of plaintiffs; that Bloodgood and Lottimer, individually and as executors of Lottimer, may be adjudged to have no right or title to the bonds as against plaintiffs; and for an injunction and damages, with costs. The defendants Bloodgood and Lottimer demurred as individuals and as executors, by several demurrers,— individually that there was a defect of parties in the omission of Jerome L. Hill; *second,* that the alleged causes of action had been improperly united, to-wit: "An alleged cause of action for the recovery from the defendant Chicago & Northwestern Railway Company of the amount of the coupons maturing November 1, 1887, on the forty-seven debenture bonds of said company described in the complaint; an alleged cause of action to compel the issue by the defendant Chicago & Northwestern Railway Company to the plaintiffs of registered bonds for the said debenture bonds; an alleged cause of action for damages for an alleged wrongful refusal to make such issue; an alleged cause of action against these defendants for damages for alleged unfounded claims of title to said debenture bonds and coupons; an alleged cause of action against these defendants as executors of the last will and testament of William Lottimer, deceased, for damages for alleged unfounded claims of title to said debenture bonds and coupons; and that the complaint does not state facts sufficient to constitute a cause of action." And they demurred, as executors, that there was a defect of parties in the omission of Jerome L. Hill; *second,* that alleged causes of action had been improperly united, and which are stated

in the same form as in the previous demurrer; and that the complaint did not state facts sufficient to constitute a cause of action.

Argued before VAN BRUNT, P. J., and BRADY and BARTLETT, JJ.

*Jas. Thomson,* for appellants.    *Butler, Stillman & Hubbard,* for respondents.

BRADY, J.    The arguments of the respective counsel in this case took a wide range, and embraced a great many propositions, consideration of all of which is entirely unnecessary for the disposition of the controlling questions involved herein.    The conclusions arrived at upon a consideration of the whole case it may not be necessary to state, for the reason that, upon two points urged by the appellants, the judgment seems to be erroneous, and must be reversed.    The plaintiffs, as pledgees of the several bonds set out in the complaint, having become so in good faith, and for full value, were entitled to all the advantages springing from the possession of the bonds, and had a right to enforce them in this action, and in the attempt to do so should not have been interfered with by the defendants Lottimer and Bloodgood, either individually or as executors, further than to pay the amount of the plaintiffs' indebtedness, and thus entitle themselves to the possession of the bonds. There does not seem to be any room to question the right of the plaintiffs to all the advantages suggested under the settled rules of this state, and that such a transfer as was made to them passed the entire title, legal and equitable, in the bonds, see *McNeil* v. *Bank,* 46 N. Y. 331,—a case in which the subject was fully discussed and the rules clearly stated.

The contention that the defendants Lottimer and Bloodgood were improperly joined with respect to the averments concerning their interference with the plaintiffs' rights cannot be sustained, for the reason that it was through their mischievous interference, as alleged in the complaint, that the defendant the railroad company refused to recognize the plaintiffs' rights, and by the assertion of a title in themselves, which it was necessary to dispose of in order to enable the railroad company to perform what they were required to do under the conditions and provisions of the bonds.    The union of these defendants was germane to the subject-matter, and perfectly consistent.    By such a union the plaintiffs, assuming that the cause of action existed, would secure the judgment of the court affecting all the parties in reference to the title to the bonds, and dispose of the controversy raised by the attack of the defendants Lottimer and Bloodgood in reference to it, whether as executors or otherwise. The object of the plaintiffs was to obtain the advantages derived from the possession of the bonds, which was prevented only by the conduct of the defendants Lottimer and Bloodgood, whose attitude was antagonistic, and caused the delay.    While different claims may not be united in a single cause of action by stating them together instead of separately, it is well established that where the facts alleged are all parts of one continuing act, creating a single cause of action, they may be united.    *People* v. *Tweed,* 63 N. Y. 194; *Lattin* v. *McCarty,* 41 N. Y. 107; *Rich* v. *Railroad Co.,* 87 N. Y. 382.    In *Lattin* v. *McCarty,* the subject was fully considered, and the rule proclaimed that the joinder of several causes of action is expressly authorized, whether legal or equitable or both, where they arise in the same transaction, or transactions connected with the same subject-matter; and the right of the plaintiff to join causes of action such as stated in this case seems to have been determined in a kindred case by this court in *Turner* v. *Conant,* 10 Civ. Proc. R. 192.    These observations are indulged in to express briefly the conviction that the complaint is not assailable for its combination of the allegations affecting the different defendants in the relations they bore to each other and to the plaintiffs.

It is contended, however, that Jerome L. Hill, who pledged the bonds, should have been made a party to this action; and this rests upon the proposi-

tion that by the pledge of the bonds the title remained in the pledgeor until it was divested by a sale upon notice, or by judicial process, and that a complete determination of the action could not be had in his absence. We have already seen that the transfer made herein vested the title to the bonds in question in the plaintiffs. But that circumstance did not deprive Hill of the right to re-deem the bonds by the payment of the indebtedness secured by them, and he has a residuary interest in the balance remaining after the payment of the lien upon them. It is not understood, therefore, how the plaintiffs can be declared to be the owners of the bonds in this action without his presence, or some effort to bring him into court. The answer to this objection is not satisfactory. It is that the title derived from Hill as pledgeor did not require his presence as defendant, because, the bonds being coupon bonds and pay-able to bearer, the title was vested by delivery to the plaintiffs, and, having the title as against these defendants, they are entitled to sue as owners; and the further proposition that, if the plaintiffs were liable to account to Hill, they are trustees of an express trust, holding the title with such liability, and can sue without joining him. The particular reference as to these propositions was made to *Sheridan* v. *Mayor, etc.*, 68 N. Y. 30, and *Wetmore* v. *Hegeman*, 88 N. Y. 69, and to other cases establishing the right of the pledgee to enforce the subject of the pledge. These cases, although they bear upon the question of the right secured by the pledgee, did not determine the point involved; in-deed, had no reference to it. The learned counsel for the plaintiffs, therefore, by inference, assumes that it is not necessary to make Hill a party to this ac-tion. It is true that Hill does not appear to have participated in the interfer-ence with the plaintiffs' rights, and for that reason, in regard to that branch of the controversy, was not a necessary party; and, if the object of the plain-tiffs was simply to prevent such interference, the action could proceed with-out the appearance of Hill. But the relief demanded extends beyond this, the plaintiffs asking that they may be declared to be the owners of the bonds, and as to this Hill seems to be a necessary party. There are no allegations which deprive him of his rights as a pledgeor of the bonds. His alleged in-solvency could have no such effect. There is therefore no legal reason as-signed or apparent why he should not be made a party. *Markham* v. *Jaudon*, 41 N. Y. 235.

And again, there is a demand for damages against the defendants Lottimer and Bloodgood not only for their own acts individually, in reference to the cause of action, but their misconduct as executors,—a combination which it is very clear is not authorized by any form of pleading accepted in this state. It would necessarily involve punishment for acts done in both their individual and representative capacity, although the rules by which their responsibility would be determined are different. This practice cannot be approved in the due and orderly administration of justice, and must be disfavored here as im-practicable. The judgment must be reversed, and a new trial ordered, with costs to appellants to abide the event, and with liberty to the plaintiffs to amend their complaint upon payment of costs. All concur.