[600 NYS2d 212]

Metropolitan Life Insurance Company, Respondent, v Noble Lowndes International, Inc., Appellant.

First Department, June 17, 1993

84

### APPEARANCES OF COUNSEL

*Peter Brown* of counsel *(Catherine M. McGrath, John J. Lynch* and *Robert R. Kiesel* with him on the brief; *Brown Raysman & Millstein,* attorneys), for appellant.

*Nancy I. Mayer* for respondent.

### OPINION OF THE COURT

RUBIN, J.

At issue in this litigation is the application of a limitation of damages clause which precludes recovery of "loss of profit, loss of business, or other financial loss" except where occasioned by "intentional misrepresentations, or damages arising out of [defendant's] willful acts or gross negligence". The jury returned a verdict, finding that defendant breached its contract to develop and install, on its computer system, software for use in processing insurance claims. Plaintiff was awarded $204,000 for amounts paid under the contract, $369,000 for expenses incurred in connection with the contract, $581,000 for cover damages (UCC 2-712) and $2,807,000 in lost savings which were expected to have resulted had the software performed as specified in the "License Agreement". Defendant

moved for judgment in its favor notwithstanding the verdict or, in the alternative, for remittitur or for a new trial. Supreme Court denied the motion, finding that a rational basis existed to support the jury finding that the breach of contract was willful: "The jury could have found from the evidence that defendant, without justification, refused to complete the contract unless it received monies beyond the maximum set forth in the contract, and that without completion, the system was useless to plaintiff who would be forced to start from scratch and find an entirely new system. Furthermore, the jury could have found from the evidence that defendant's refusal to perform was without justification or excuse and motivated by its desire to eliminate contractual obligations it perceived to be an obstacle to any sale of its computer division to a company known as Erisco."

At issue is whether plaintiff's recovery for breach of the agreement is limited to the damages specified in the contract or whether, as plaintiff urges, the contract damage provisions are merely "optional" and the limitation of damages provision unenforceable due to the "willful" breach of the contract by defendant. Prior to trial, Supreme Court (David Saxe, J.) dismissed plaintiff's fourth cause of action, claiming that defendant negligently performed its obligations under the contract, for failure to state a cause of action, but declined to dismiss plaintiff's claim for consequential damages, reasoning that plaintiff's failure to use the term "willful" in its complaint "does not preclude a factual finding that defendant's conduct was willful, which finding would permit an ultimate award of consequential damages." This Court affirmed the ruling without opinion (145 AD2d 1005).

The question before this Court is whether the defective performance and ultimate breach of the contract by defendant warrants an award of damages beyond those expressly provided for in the License Agreement and in contravention of its limitation of damages section.

The contract is straightforward and unambiguous and, therefore, its interpretation presents a question of law for the court *(West, Weir & Bartel v Mary Carter Paint Co.,* 25 NY2d 535, 540; *Eden Music Corp. v Times Sq. Music Publs. Co.,* 127 AD2d 161, 164). The instrument gives plaintiff three options upon a material breach which occurs either before acceptance of the software system or within a year thereafter. In the event the system does not perform to specifications, (1) plaintiff may terminate immediately and receive a full refund of all

monies paid; (2) in the event of a material breach which goes unremedied for 30 days after written notice, plaintiff may likewise terminate and receive a full refund; or (3) plaintiff may "rectify" defendant's defective or failed performance. In the event plaintiff elects the latter option, the remedy for nondelivery of a working system is, as specified in section 12, subsection 6 of the contract, to charge the reasonable expenses of completing the system to defendant which "shall not exceed amounts due and paid to Licensor [defendant]." If this option is exercised prior to acceptance, plaintiff is entitled to retain all deliverables and receive a full refund of amounts paid for those items. While plaintiff argues that the use of the words "option" and "discretion" renders the specified remedies non-exclusive, it is clear that the discretion afforded to plaintiff is the right to elect among the various remedies and to unilaterally determine, in accordance with section 1 (k) of the License Agreement, whether defendant's work is in compliance with contract specifications.

In addition to the specific remedies available, the agreement also contains a section entitled "Limitations of Liability" which provides that, except as set forth in a section dealing with indemnity, and "except for intentional misrepresentations, or damages arising out of licensor's willful acts or gross negligence, licensor shall not be liable for lost profit, loss of business, or other financial loss which may be caused by, directly or indirectly, the inadequacy of the system for any purpose or any use thereof or by any defect or deficiency therein, or resulting from or in connection with licensor's performance or non-performance under this agreement."

It is because plaintiff alleged a willful act of misconduct by defendant that Justice Saxe, in his decision denying defendant's motion to dismiss all claims for consequential damages, declined to categorize the various damages as either consequential or direct, willful misconduct being actionable apart from or in addition to the action on the contract and, both as a matter of law and by its terms, not subject to the limitation of damages clause. The jury returned a special verdict, answering "yes" to the question, "Were the acts of Noble Lowndes willful?" Thus, the question before this Court is whether the evidence adduced at trial is sufficient, as a matter of law, to sustain a finding of willful misconduct so as to permit the award of damages in excess of those specified in the contract.

■ This Court is mindful of the earlier ruling on defendant's

motion to dismiss all claims for compensatory damages in which Supreme Court opined that defendant's willfulness is a question of fact. This determination does no more than sustain the legal sufficiency of the pleading so as to permit the claim to be submitted to the jury. It does not foreclose review of the findings of that jury by an appellate court for the purpose of ascertaining that they are supported by legally sufficient evidence. Logically, an appellate court conducting a review of the entire case cannot be bound by a determination made at an early stage of the proceedings without the benefit of the full trial record, and the law of the case doctrine does not dictate so absurd a result.

■ Granting, as Supreme Court determined, that defendant refused to meet its contractual obligations unless it received more money and, in order to facilitate the sale of its computer division, terminated the contract, plaintiff has proved no more than a breach of contract, albeit deliberate. It is well settled that a breach of contract is compensable by contract damages alone *(Megaris Furs v Gimbel Bros.,* 172 AD2d 209, 210-211). In *Briefstein v Rotondo Constr. Co.* (8 AD2d 349, 351), this Court observed, "An intention not to perform does not bring on heavier damages than actual nonperformance". The Court of Appeals noted that "it is a long-established doctrine that one does not have a cause of action against another contracting party for conspiracy to breach the agreement between them" *(Bereswill v Yablon,* 6 NY2d 301, 306, citing *Miller v Vanderlip,* 285 NY 116). Therefore, even if it could be shown that defendant entered into the contract with plaintiff fully intending never to perform its obligation thereunder, the damages recoverable are still limited to those specified in the contract: "The policy which runs through the fabric of the law of contracts is to bind a party by what he agrees to do whether or not he intends to do what he agrees" *(Briefstein v Rotondo Constr. Co., supra,* at 351).

In isolated instances, where a contract is employed merely as a device in a broader scheme to defraud one of the parties, relief in excess of contract damages may be obtained; but in this event, the plaintiff must plead and prove fraud, which constitutes "a breach of duty distinct from, or in addition to, the breach of contract" *(North Shore Bottling Co. v Schmidt & Sons,* 22 NY2d 171, 179; *Tesoro Petroleum Corp. v Holborn Oil Co.,* 108 AD2d 607). The complaint herein alleges only breach of contract—including anticipatory breach and the noncognizable "negligent performance of [a] contract" *(Megaris Furs v*

*Gimbel Bros., supra,* at 211)—and the evidence adduced at trial falls far short of that necessary to make out a case of fraud *(Rich v New York Cent. & Hudson Riv. R. R. Co.,* 87 NY 382, 398; *Albemarle Theatre v Bayberry Realty Corp.,* 27 AD2d 172, 176). Nor are the damages awarded in this action sustainable under a theory of quasi contract: "The existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter" *(Clark-Fitzpatrick, Inc. v Long Is. R. R. Co.,* 70 NY2d 382, 388).

The law with respect to contractual agreements which limit damages arising out of performance was extensively reviewed in *Sommer v Federal Signal Corp.* (79 NY2d 540, 553), which states, "Absent a statute or public policy to the contrary, a contractual provision absolving a party from its own negligence will be enforced." Therefore, in a strictly commercial context, a provision limiting recovery is enforceable according to its terms unless the special relationship between the parties, a statute or public policy imposes liability *(Florence v Merchants Cent. Alarm Co.,* 51 NY2d 793; *Ciofalo v Vic Tanney Gyms,* 10 NY2d 294, 297). Here, as in *Ciofalo (supra,* at 297-298), "there is no special legal relationship and no overriding public interest which demand that this contract provision, voluntarily entered into by competent parties, should be rendered ineffectual".

Plaintiff, however, argues that the limitation of damages provision of its agreement with defendant should not be given effect because defendant's conduct was found by the jury to be willful and therefore comes within the exception stated for loss occasioned by "intentional misrepresentations, or damages arising out of licensor's willful acts or gross negligence". As noted in the previous discussion, exculpatory provisions are not enforced by the courts without limitation. "To the extent that agreements purport to grant exemption for liability for willful or grossly negligent acts they have been viewed as wholly void" *(Gross v Sweet,* 49 NY2d 102, 106). An exculpatory provision "will not apply to exemption of willful or grossly negligent acts" *(Kalisch-Jarcho, Inc. v City of New York,* 58 NY2d 377, 384-385). Nevertheless, what plaintiff fails to appreciate is that defendant's conduct in failing to perform its obligations under the contract is not a "willful act"—either as a matter of law or as the applicable law was explained to the jurors in this case.

The classic example of circumstances in which the willful

nonperformance of a contract is actionable *as a tort* is *Rich v New York Cent. & Hudson Riv. R. R. Co.* (87 NY 382, 396, *supra)*, in which it was stated, "The company willfully and purposely refused to perform its contract". The Court went on to observe: "There was here, on the theory of the complaint, something more than a mere breach of contract. That breach was not the tort; it was only one of the elements which constituted it. Beyond that and outside of that there was said to have existed a fraudulent scheme and device * * * In other words, the necessary theory of the complaint is that a breach of contract may be so intended and planned; so purposely fitted to time, and circumstances and conditions; so inwoven into a scheme of oppression and fraud; so made to set in motion innocent causes which otherwise would not operate, as to cease to be a mere breach of contract, and become, in its association with the attendant circumstances, a tortious and wrongful act or omission." *(Supra,* at 397.)

"Willful" is a term of tort, not contract. As a leading commentator of the law observes, it is synonymous with " 'wanton' " and " 'reckless' ", and the three terms are "grouped together as an aggravated form of negligence" indicating that "the actor has intentionally done an act of an unreasonable character in disregard of a risk known to him or so obvious that he must be taken to have been aware of it, and so great as to make it highly probable that harm would follow" (Prosser, Torts § 34, at 184, 185 [4th ed]). Indeed, the Court of Appeals in *Rich (supra,* at 397) stated, "It may be granted that an omission to perform a contract obligation is never a tort, unless that omission is also an omission of a legal duty."

■■ While it was earlier held that plaintiff need not plead a tort theory of recovery in order to proceed to trial on what is, in any event, a tort theory of recovery, and there can be no dispute that this holding is law of the case, the proof adduced at trial establishes no more than an intentional abandonment of the agreement by defendant for the purpose of expediting the sale of its computer division and avoiding further loss in connection with the development of software for plaintiff. "Intentional", however, is not the legal equivalent of "willful". Therefore, plaintiff has demonstrated no tortious conduct which might operate to relieve it of the consequences of a contractual provision " 'negotiated at arm's length between * * * sophisticated business entities' " *(Gross v Sweet, supra,*

at 108, quoting *Hogeland v Sibley, Lindsay & Curr Co.,* 42 NY2d 153, 158).

Supreme Court instructed the jury that defendant's request for a price increase does not comprise a willful act which would entitle plaintiff to damages in addition to those specified in the contract. The jury was further instructed that the failure to perform the contract, even if intentional or deliberate, does not entitle plaintiff to additional damages and, likewise, the failure to make delivery of operating software in a timely manner as specified in the contract does not constitute a willful act, even if deliberate. The Court concluded, "In order to find that Noble Lowndes performed a willful act, you must find that it acted in bad faith, with the intent to cause injury to Metropolitan. You must find that Noble Lowndes' act was malicious."

There is no valid line of reasoning which, together with any permissible inferences, supports the conclusion that defendant's actions in connection with its performance of this agreement constitute willful (or wanton or reckless) misconduct or malice or bad faith, as those terms are defined in case law *(Cohen v Hallmark Cards,* 45 NY2d 493, 499). Defendant did not act out of a "dishonest purpose", nor did it perpetrate a "wrongful act to the injury of another without justification" *(Kalisch-Jarcho, Inc. v City of New York, supra,* at 385, ns 5, 4). The evidence establishes only the deliberate abandonment of a contractual obligation, not an "injury".

Plaintiff's intimation that defendant's attempt to renegotiate a higher contract price amounts to economic duress is without foundation. This theory of recovery was expressly disavowed by plaintiff's counsel, on the record, during the precharge conference. In any event, as the Court of Appeals stated in regard to a pleading which alleged that a defendant's refusal to perform was unconscionable, oppressive and undertaken maliciously, "The theory on which plaintiff seeks recovery permits a complaining party to void a contract and recover damages when it establishes that it was compelled to agree to the contract terms because of a wrongful threat by the other party which precluded the exercise of its free will" *(805 Third Ave. Co. v M.W. Realty Assocs.,* 58 NY2d 447, 451). The classic case on this subject, *Austin Instrument v Loral Corp.* (29 NY2d 124, 130), states, "The existence of economic duress or business compulsion is demonstrated * * * by proof that one party to a contract has threatened to breach the agreement by withholding goods unless the other party agrees

to some further demand". (This much is demonstrated by the facts of the matter before this Court.) "However, a mere threat by one party to breach the contract by not delivering the required items, though wrongful, does not in itself constitute economic duress. It must also appear that the threatened party could not obtain the goods from another source of supply and that the ordinary remedy of an action for breach of contract would not be adequate" *(supra,* at 130-131).

Aside from counsel's explicit disaffirmance of this theory of recovery, it is obvious that Metropolitan's exercise of free will was not overcome because it never agreed to pay any greater amount under the contract. Moreover, it already possessed a system for claims processing and, thus, an alternative to the software system under development by defendant was readily available and already in place. Finally, plaintiff expressly agreed that any recovery for nonperformance would be limited to a refund of any amount paid under the agreement.

Plaintiff relies on this Court's opinion in *Graphic Scanning Corp. v Citibank* (116 AD2d 22), contending during the precharge conference that it "essentially equates willfulness with a conscious repudiation of the contract." However, in the *Graphic Scanning* case this Court did no more than hold that an exculpatory provision did not apply, according to its terms, to the particular omission comprising the breach of contract. That is far from the situation presented by the agreement at bar, which anticipates precisely the kind of omission sued upon and provides an express remedy to plaintiff.

■ Plaintiff contends that, regardless of the limitation on recovery of consequential damages, it can recover what it terms "cover damages" because they are direct and not consequential damages under the Uniform Commercial Code (UCC 2-712). This argument need not detain us. It is clear that, in the context of this contract, the provision barring recovery of "any lost profits, lost savings or other consequential damages" is employed together with the bar against recovery of "loss of profit, loss of business, or other financial loss" to exclude any damages not expressly provided for in the instrument—that is, in excess of the specified refund of amounts paid to defendant.

It should not require comment that the parties to this contract could have expressly provided for liquidated damages for delay or default in *its* performance had they deemed it advisable. In stark contrast, the contract provides that, except

with respect to defendant's ownership rights in the subject software, "Licensor makes no warranties either express or implied as to any matter whatsoever, including, without limitation, the condition of the product, its merchantability, or its fitness for any particular use." Plaintiff cannot escape the contractual limitations on recovery merely by recasting its breach of contract allegations as tort claims *(Megaris Furs v Gimbel Bros., supra,* at 211) or by "employing language familiar to tort law" *(Clark-Fitzpatrick, Inc. v Long Is. R. R. Co., supra,* at 390).

Accordingly, the order of the Supreme Court, New York County (Stuart Cohen, J.), entered December 18, 1991, which denied defendant Noble Lowndes International, Inc.'s motion for judgment notwithstanding the verdict, should be reversed, on the law, and the motion granted, without costs, and the judgment of the same court and Justice, entered January 9, 1992 which, after jury trial, awarded plaintiff Metropolitan Life Insurance Company the sum of $5,624,584.56, should be modified, on the law, without costs, and judgment entered in favor of plaintiff in the amount of $204,000, plus interest, costs and disbursements. The appeal from the order of the same court and Justice, entered December 19, 1991, which directed entry of judgment in favor of plaintiff, is dismissed, without costs, as subsumed in the judgment.

SULLIVAN, J. P., WALLACH and KUPFERMAN, JJ., concur.

Order of the Supreme Court, New York County, entered December 18, 1991, reversed, on the law, and defendant's motion for judgment notwithstanding the verdict granted; judgment of the same court and Justice entered January 9, 1992, modified, on the law, and judgment directed to be entered in favor of plaintiff in the amount of $204,000, plus interest, costs and disbursements. The appeal from the order of the same court and Justice, entered December 19, 1991, which directed entry of judgment in favor of plaintiff, is dismissed, without costs, as subsumed in the appeal from the judgment.