**FIRST UNION NATIONAL BANK**

v.

**NEW YORK LIFE INSURANCE AND ANNUITY CORP.**

Civ.A. No. DKC 2000–1956.

United States District Court, D. Maryland.

July 13, 2001.

David S. Musgrave, Matthew W. Cheney, Piper, Marbury, Rudnick and Wolfe, LLP, Baltimore, MD, for Plaintiff.

Stefan Alexander Hagerup, Akin, Gump, Strauss, Hauer and Feld, LLP, Washington, DC, James W. Nowak, Rockville, MD, Leonard Arthur Sacks, Rockville, MD, for Defendants.

## MEMORANDUM OPINION

CHASANOW, District Judge.

Plaintiff, First Union National Bank ("First Union")[1] has filed a summary judgment motion in its conversion and breach of contract action against New York Life Insurance and Annuity Corporation ("New York Life"). New York Life has filed a summary judgment motion against the Third Party Defendant, Horace G. Baldwin, in the event that the company is found liable to First Union. The issues are fully briefed, and no hearing is deemed necessary. Local Rule 105.6. For the following reasons, these motions shall be denied.

### I. Background

On July 17, 1997, First Union loaned $500,000 to Mr. Baldwin. Repayment of the loan was secured by, among other things, a security interest in a variable annuity account, number 57–011193 (the "Account"), in Mr. Baldwin's name that he maintained at New York Life. Plaintiff alleges that the security interest in the Account is evidenced by both the Commercial Pledge and Security Agreement as well as the Assignment of Life Insurance as Collateral document. First Union's Mot. for Sum. Judgment, Ex. 2 & 3. Mr. Baldwin signed both documents on July 17, 1997, in favor of First Union. New York Life does not comment on these documents but does contend that First Union failed to require it to sign a formal agreement consenting to Baldwin's assignment. New York Life's Mot. for Sum. Judgment, Ex. 11, Control Agreement and Acknowledgment of Pledge Security.

On August 12, 1997, New York Life acknowledged receipt of a duplicate copy of the Assignment of Life Insurance Policy as Collateral. First Union's Mot. for Sum. Judgment, Ex. 3. Additionally, on December 10, 1997, New York Life sent a letter to Signet Bank verifying that the Account had been collaterally assigned to it. First Union's Mot. for Sum. Judgment, Ex. 4, December 10, 1997, New York Life's letter to Signet.

On October 8, 1998, Mr. Baldwin sent a letter requesting that New York Life pay him the surrender value of the Account. New York Life's Mot. for Sum. Judgment, Ex. 12. In its motion for summary judgment against Mr. Baldwin, New York Life admits that, due to an administrative mistake, the insurance company failed to notice that Baldwin's assignment of the policy to First Union had not been released and issued him a check for the amount of the policy surrender value, $675,290.10. New York Life's Mot. for Sum. Judgment, 2. Mr. Baldwin received and cashed the check on or about October 16, 1998.

Within weeks of his cashing the New York Life check, Mr. Baldwin and First Union agreed to modify and extend the 1997 Promissory Note by signing a new note on November 17, 1998, which extended Mr. Baldwin's indebtedness until October 31, 1999. New York Life's Mot. for Sum. Judgment, Ex. 13, 1998 Promissory

---

1. First Union is the successor by merger to Signet Bank. Aff. of Thomas Cooper, ¶ 5. Thus, the term "First Union" shall refer to both First Union National Bank as successor to Signet Bank, and First Union National Bank.

Note, 2. By signing the 1998 Promissory note, Mr. Baldwin represented that the Account, which he had recently cashed, continued to serve as collateral for the loan. *Id.*

In early 2000, Baldwin still had not paid off the 1998 Promissory Note. Shortly after First Union learned that Mr. Baldwin had liquidated the Account, it sent a letter to New York Life demanding the cash sums it was owed under the Promissory Note. First Union's Motion for Sum. Judgment, Ex. 5, April 20, 2000, Musgrave Letter to New York Life. At the same time, First Union began negotiations with Mr. Baldwin to extend further the due date of the loan. New York Life's Mot. for Sum. Judgment, Ex. 19, April 19, 2000, Musgrave Letter to Baldwin. New York Life claims that First Union reached an agreement with Baldwin to restructure the loan by referring to a Term Sheet signed by Mr. Baldwin and the bank's acceptance of his $2,000 check offered as a good faith deposit.

First Union contradicts this assumption by explaining that the Term Sheet titled "For Discussion Purposes Only" does not bind the bank to any particular action. Moreover, even though the bank initially cashed Mr. Baldwin's check, First Union returned the amount accompanied by a letter stating that Mr. Baldwin's loan would not be restructured. New York Life's Mot. for Sum. Judgment, Ex. 23, June 23, 2000 Musgrave Letter to Baldwin. First Union subsequently filed this lawsuit seeking a judgment against New York Life alleging Mr. Baldwin is in default of his loan. In response to First Union's action, New York Life filed suit against Mr. Baldwin seeking indemnity in the event that it is found liable for his indebtedness. Additionally, First Union states that it filed a confessed judgment suit against Mr. Baldwin in the Circuit Court for Anne Arundel County, Maryland, Case No. C–2000–67745.CJ on December 5, 2000.

## II. *Summary Judgment Standard*

A motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In other words, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate. *Anderson,* 477 U.S. at 250, 106 S.Ct. 2505; *see also Pulliam Inv. Co. v. Cameo Properties,* 810 F.2d 1282, 1286 (4th Cir.1987); *Morrison v. Nissan Motor Co.,* 601 F.2d 139, 141 (4th Cir. 1979); *Stevens v. Howard D. Johnson Co.,* 181 F.2d 390, 394 (4th Cir.1950). The moving party bears the burden of showing that there is no genuine issue of material fact. Fed.R.Civ.P. 56(c); *Pulliam,* 810 F.2d at 1286 (citing *Charbonnages de France v. Smith,* 597 F.2d 406, 414 (4th Cir.1979)).

When ruling on a motion for summary judgment, the court must draw all reasonable inferences in favor of and construe the facts in the light most favorable to the non-moving party. *Tinsley v. First Union Nat'l Bank,* 155 F.3d 435, 437 (4th Cir. 1998). A party who bears the burden of proof on a particular claim must factually support each element of his or her claim. "[A] complete failure of proof concerning an essential element ... necessarily renders all other facts immaterial." *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548.

## III. Analysis

### A. First Union's Motion for Summary Judgment

#### 1. Choice of Law

■■■■ First Union contends that Maryland state law governs the resolution of the conversion claim whereas New York Life argues that New York state law applies. Jurisdiction of this court is based on diversity of citizenship. 28 U.S.C. § 1332. In a diversity case, this court must apply the conflicts of laws rules of Maryland, the forum state. *Klaxon v. Stentor Electric Manf. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941).

■■■■ Maryland law dictates that the lex loci delicti rule applies to tort actions. *Philip Morris Inc. v. Angeletti*, 358 Md. 689, 746, 752 A.2d 200, 231 (2000). This doctrine "requires a tort action be governed by the substantive law of the state where the wrong occurred." *Id.* (quoting *Hauch v. Connor*, 295 Md. 120, 123–25, 453 A.2d 1207, 1209–10 (1983)). The place of injury has been further defined as the place where the last act required to complete the tort occurred. *See Restatement (First) of Conflict of Laws* § 377 (1934) (stating that the "place of wrong is the state where the last event necessary to make an actor liable for an alleged tort takes place"). While no Maryland court has defined the last act necessary to complete the tort of conversion, both parties cite to *Western Smelting & Metals, Inc. v. Slater Steel, Inc.*, 621 F.Supp. 578, 583 (N.D.Ind.1985), stating that misappropriation of the property itself is that last act.

New York Life argues that the last act occurred in New York because that is where Mr. Baldwin's surrender request was processed. However, First Union contends that the misappropriation of property occurred in Maryland, where New York Life delivered the check to Mr. Baldwin. This court agrees with First Union that New York Life's delivery of the check was the last act necessary to complete the alleged tort of conversion because it was this act that sealed the misappropriation. Accordingly, the court finds that Maryland law should be applied in this case.[2]

#### 2. Merits of the Conversion Claim

■■■■ First Union claims that New York Life converted its collateral by paying the accumulation value of the Account to Mr. Baldwin prior to his satisfaction of the promissory note. Conversion is any "distinct act of ownership or dominion exerted by one person over the personal property of another in denial of his right or inconsistent with it." *Interstate Insurance Co. v. Logan*, 205 Md. 583, 588–89, 109 A.2d 904 (1954); *Century National Bank v. Makkar*, 132 Md.App. 84, 89, 751 A.2d 1, 4 (2000).

> "The gist of a conversion is not the acquisition of the property by the wrongdoer, but the wrongful deprivation of a person of property to the possession of which he is entitled." Accordingly, a conversion occurs at such time as a person is deprived of property which he is entitled to possess.

*Baltimore & O.R. Co. v. Equitable Bank, N.A.*, 77 Md.App. 320, 325, 550 A.2d 407 (1988) (quoting *Staub v. Staub*, 37 Md.App. 141, 142–143, 376 A.2d 1129 (1977)).

■■■■ In order to recover for conversion, "one must have either been in actual possession or have had the right to immediate possession in the converted asset." *Hamilton v. Ford Motor Credit Co.*, 66

---

**2.** The elements of a conversion claim do not differ significantly under New York Law. *See* *Meese v. Miller*, 79 A.D.2d 237, 436 N.Y.S.2d 496, 500 (4th Dep't 1981).

Md.App. 46, 64, 502 A.2d 1057 (1986). Additionally, "[t]he intent required is not necessarily a matter of conscious wrongdoing. It is rather an intent to exercise a dominion or control over the goods which is in fact inconsistent with the plaintiff's rights ... A mistake of law or fact is no defense." *Keys v. Chrysler Credit Corp.*, 303 Md. 397, 414, 494 A.2d 200 (1985) (quoting W. *Keeton, Prosser & Keeton on Torts*, § 15 (15th ed.1984)).

 In its Amended Complaint, First Union alleges that New York Life converted its "collateral." The "collateral", in turn, is alleged to be a security interest in the Account. This is an intangible right. Under Maryland law, such rights may only be the subject of the tort of conversion if the "intangible rights ... are merged or incorporated into a transferable document." *Allied Investment Corp. v. Jasen*, 354 Md. 547, 562, 731 A.2d 957 (1999). The Maryland Court of Appeals refused "to extend the tort further, to cover completely intangible rights or as section 242(2) of the Restatement contemplates, to situations in which the relevant document itself has not been transferred." *Id.* Furthermore, the court concluded that, in order to state a claim for conversion, the complaint must allege facts that "tangible documents" evidencing the property interests were improperly transferred. *Id.*

The Restatement section that has been adopted in Maryland, § 242(1) can apply to insurance policies. *Restatement (Second) of Torts* § 242(1), Comment b (1965). Plaintiff, however, does not allege that it was entitled to possession of any document evidencing the Account or that any such documents were necessary to the protection and enforcement of the intangible rights in which it had a security interest. Indeed, the current record appears to demonstrate that Mr. Baldwin was able to obtain the money merely by writing a letter, without surrendering any document into which the rights had merged. Accordingly, the complaint and motion papers do not demonstrate that Plaintiff is entitled to judgment as a matter of law on the conversion claim.

In addition to the absence of this threshold element for the alleged tort of conversion, Plaintiff has also not demonstrated that it had an immediate right to possession of the intangible rights or the money. While Mr. Baldwin had executed an Assignment of Life Insurance Policy as Collateral, to be in effect as long as the Promissory note was outstanding, there is no evidence that the bank had the immediate right to receive the portion of the Account equivalent to Mr. Baldwin's indebtedness. To prove conversion, First Union must have either had actual possession or an immediate right to possess the Account at the time Mr. Baldwin requested the surrender value of the policy. Consequently, Plaintiff shall be denied summary judgment as to the conversion claim.

**2. Breach of Contract**

 First Union also argues that by virtue of Mr. Baldwin's assignment of the Account, a contractual relationship existed between the bank and New York Life. An insurance policy has been defined in Maryland as a chose in action. *In re Posin*, 183 F.Supp. 380, 382 (D.Md.1960) (defining life insurance policy as a chose in action); *Souder v. Home Friendly Soc. of Baltimore*, 72 Md. 511, 20 A. 137, 138 (1890) (acknowledging that under Maryland law a life insurance policy is a chose in action and may be assigned). A chose in action means the policy confers a right to bring legal action to recover a sum of money from the contract, and may be assigned, transferred or sold by its owner, subject to certain limitations and restrictions. *See* 17

*Williston on Contracts* § 49:119 (4th ed.2000).

 New York Life contends that even though it acknowledged that the assignment between Mr. Baldwin and First Union took place, it never accepted responsibility for the validity of the assignment such that a contract arose between the insurance company and the assignee, First Union. First Union argues that "[w]hen the insurance company assents to [the assignment], a new contract arises between it and the assignee." *Hanover Fire Ins. Co. v. Brown, et al.,* 77 Md. 64, 27 A. 314 (1893). However, when the assignor makes the assignment to a creditor, the "assignor is entitled to the proceeds of the policy over and above the amount necessary to pay the debt to the assignee secured by the assignment." *See* 17 *Williston on Contracts* § 49:128 (4th ed.2000). Thus, "the insurer's consent to an assignment of the policy to a creditor does not create a novation" resulting in a new contract. *Id.* Rather, the company remains legally bound to the insured assignor, but the notice of assignment will protect it if it pays a loss claim directly to the assignee. *Id.* Although the contract created by the assignment is an ordinary contract to be interpreted under general contract principles, an "assignee of an insurance policy does not sue in his or her own right but makes only a derivative claim standing in the shoes of the assignor." *Id.* Thus, this court will deny Plaintiff summary judgment on the breach of contract claim.

## B. New York Life's Motion for Summary Judgment

Because judgment is not being granted against New York Life and in favor of First Union, New York Life's motion for summary judgment seeking indemnity from Mr. Baldwin shall be denied without prejudice as moot.

## IV. Conclusion

First Union has failed to demonstrate that it is entitled to summary judgment on the conversion and breach of contract claims. Indeed, from the foregoing analysis, it appears that New York Life may be entitled to summary judgment in its favor. A telephone conference will be held to discuss what further proceedings, if any, are appropriate.