**COMPUSPA, INC.**

**v.**

**INTERNATIONAL BUSINESS MACHINES CORPORATION.**

No. Civ.A. DKC 2002–0507.

United States District Court, D. Maryland.

Sept. 3, 2002.

---

Read K. McCaffrey, Patton Boggs, LLP, Washington, DC, for Plaintiff.

J. Hardin Marion, William C. Sammons, Tydings and Rosenberg, LLP, Baltimore, MD, for Defendant.

## MEMORANDUM OPINION

CHASANOW, District Judge.

Presently pending and ready for resolution in this breach of contract, breach of implied covenants of good faith and fair dealing, and tortious interference with contractual relations case is the motion of Defendant International Business Machines Corporation to dismiss all counts against it pursuant to Fed.R.Civ.P. 12(b)(6). The issues have been fully briefed and no hearing is deemed necessary. Local Rule 105.6. For reasons that follow, Defendant's Motion to Dismiss will be granted in part and denied in part.

## I. Background

The following facts are alleged by Plaintiff CompuSpa, Inc. in its complaint. Plaintiff is a computer consulting and hardware maintenance corporation which provides computer systems engineers to other business entities. On or about March 31, 2000, Plaintiff and Defendant entered into an indefinite delivery/indefinite quantity agreement ("the Contract"), which was revised on April 10, 2000 and modified on May 3, 2000. Under the Contract, Plaintiff agreed to provide Defendant with computer systems administrators, network administrators and software engineers in support of a contract Defendant held with the Internal Revenue Service ("the IRS/Presidio Project"). The Contract required Defendant to issue Release Orders to engage Plaintiff for the provision of services.

On the same day the parties entered into the Contract, Defendant engaged Plaintiff to provide technical services for the IRS/Presidio Project by issuing Release Order # 1 ("RO # 1") pursuant to the Contract. In accordance with RO # 1, two of Plaintiff's employees began service at IRS facilities—one in Ogden, Utah and one in Covington, Kentucky—on April 3, 2000 and a third began service in Martinsburg, West Virginia on April 17, 2000. Plaintiff's employees continued to provide services pursuant to RO # 1 until at least December 31, 2000, and RO # 1 is not the basis of Plaintiff's complaint.

On May 1, 2000, Defendant again engaged Plaintiff by issuing Release Order # 2 ("RO # 2") for five technicians to work on the IRS/Presidio Project in Austin, Texas ("the Austin Project"). Pursuant to RO # 2, as modified, Plaintiff supplied five technicians who began work at the Austin IRS facility on May 1, 2000. These technicians included: Richard Sumrall, Randall Caldwell, Michael Eby, Brian Hennington, and James Dabney (collectively, "the Austin Technicians").

As required by its employment contracts with the Austin Technicians, Plaintiff issued paychecks to them on May 19, 2000 for services rendered between May 1 and May 15, 2000. On May 23, 2000, Plaintiff's bank informed it that PayChex had placed a garnishment on its account and that all monies therein were frozen. Ainsley Gill, plaintiff's President and CEO immediately informed Defendant of the temporary cash flow problem and requested that Defendant immediately pay its outstanding invoices owed to Plaintiff, which exceeded $70,000. Defendant, however, did not respond to Mr. Gill's request.

On May 24, 2000, Mr. Gill contacted the five Austin Technicians to advise them of the temporary cash flow problem. To Plaintiff's knowledge as of that date, all five of the Austin Technicians intended to fulfill their contracts with Plaintiff on the Austin Project. The next day, however, several of Plaintiff's competitors, including Cardinal Systems Group, Icon Consulting, Inc. and VICCS, contacted the Austin Technicians and other CompuSpa employees and informed them that Plaintiff was ceasing business. The competitors also told the Austin Technicians that Defendant wanted them to go to work for one of the competitors so the Austin Technicians could continue to work on the IRS/Presidio Project without interruption.

According to Plaintiff, Defendant's employees Charmaine Powers and Fred Williams had provided Plaintiff's competitors with the Austin Technicians' names and contact information, with the intent that the competitors hire the Austin Technicians away from Plaintiff. Defendant also communicated to the competitors that Defendant was ceasing to do business with Plaintiff, despite the fact that RO # 2 was in full force and effective through at least

July 31, 2000. Plaintiff alleges that on or about May 26, 2000, Ms. Powers also falsely told the Austin Technicians that the State of Maryland had seized all of Plaintiff's assets and that Plaintiff had no chance of recovery. Plaintiff alleges that Ms. Powers communicated these falsehoods with the intent to induce Plaintiff's employees to leave their employment with Plaintiff in violation of their contracts.

On May 26, 2000, Plaintiff made arrangements with its "teaming partner," Churchill and Harriman, to pay the Austin Technicians' paychecks. As a result, the Austin Technicians were paid on May 26, 2000, one week after the initial set of paychecks from the frozen account had been issued. Nevertheless, on June 1, 2000, Randy Caldwell, one of the Austin Technicians, submitted his resignation to Plaintiff without the thirty-day notice required by his employment contract. The next day, June 2, 2000, Defendant notified Plaintiff that it was immediately terminating RO # 2 for cause, citing the following reasons for the termination: (a) Plaintiff's failure to notify Defendant of Randy Caldwell's resignation and the resulting lack of a full complement of employees on site; (b) Plaintiff's attempt to assign all or part of the subcontract to Churchill and Harriman without Defendant's consent; and (c) the Austin Technicians' distress over not being paid by Plaintiff.

By June 3, 2000, all five of the Austin Technicians had left Plaintiff's employ and began working for Cardinal, which ultimately received the contract to service the Austin Project after Defendant terminated RO # 2. Plaintiff alleges that Defendant's false and malicious statements regarding Plaintiff's solvency provided the catalyst for the Austin Technicians' departure. Plaintiff further alleges that Cardinal was able to offer the Austin Technicians more attractive compensation packages than Plaintiff could because Defendant allowed Cardinal to charge a higher billable rate than it allowed Plaintiff to charge.

Plaintiff brings a three count complaint alleging breach of contract, breach of the implied covenants of good faith and fair dealing, and tortious interference with contractual relations. Plaintiff claims to have suffered damages, lost profits, consequential damages, and harm to its reputation as a result of Defendant's alleged actions. In addition, Plaintiff seeks punitive damages in the amount of $1 million and attorney's fees. In response, Defendant moves to dismiss all counts for failure to state a claim upon which relief can be granted. Defendant also seeks to have Plaintiff's claims for lost profits, consequential damages, and punitive damages stricken because of a contractual provision limiting liability and Plaintiff's alleged failure to demonstrate that Defendant acted with the malice required for an award of punitive damages.

## II. Standard of Review

A motion to dismiss pursuant to Fed. R.Civ.P. 12(b)(6) ought not be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). All that the Federal Rules of Civil Procedure require of a complaint is that it contain " 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Id.* at 47, 78 S.Ct. 99; *Comet Enters. Ltd. v. Air-A-Plane Corp.,* 128 F.3d 855, 860 (4th Cir.1997). "Given the Federal Rules' simplified standard for pleading, '[a] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.' " *Swierkiewicz v.*

*Sorema N.A.*, 534 U.S. 506, 514, 122 S.Ct. 992, 998, 152 L.Ed.2d 1 (2002), *quoting Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984).

In reviewing the complaint, the court accepts all well-pled allegations of the complaint as true and construes the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff. *Ibarra v. United States*, 120 F.3d 472, 473 (4th Cir.1997). The court must disregard the contrary allegations of the opposing party. *A.S. Abell Co. v. Chell*, 412 F.2d 712, 715 (4th Cir.1969). The court need not, however, accept unsupported legal conclusions, *Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir.1989), legal conclusions couched as factual allegations, *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986), or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir.1979).

### III. Analysis

The parties agree that Counts I and II are governed by the broad forum selection clause in the Contract, ¶ 15.3, which states that "any dispute arising under or relating to this Agreement and/or performance thereunder will be governed by the laws of the State of New York." Accordingly, Counts I and II, including the damages issues regarding these counts, will be decided under New York law.

It is less clear, however, which state's law applies to Count III, which alleges tortious interference with contractual relations. Generally, Maryland adheres to the choice of law rule of *lex loci delecti*, or place of harm, to determine the applicable law in tort actions. *See First Union Nat'l Bank v. New York Life Ins. and Annuity Corp.*, 152 F.Supp.2d 850, 854 (D.Md.2001); *Philip Morris Inc. v. Angeletti*, 358 Md. 689, 746, 752 A.2d 200, 231 (Md.2000). Under that rule, Texas tort law would govern the case at bar because the actions allegedly constituting tortious interference with Plaintiff's contractual relations with its employees occurred in the State of Texas. It is possible, however, that the broad language of the forum selection clause covers the allegations in Count III as a "dispute ... relating to this Agreement and/or performance thereunder...." Defendant's alleged encouragement of the Austin Technicians to violate their employment contracts with Plaintiff arguably relates to the performance of the Contract between Plaintiff and Defendant. If Count III is deemed to be covered by the forum selection clause, then it must be decided under New York law.

The parties appear to agree that Texas law applies to Count III, although they do address New York law in the event that the allegations in this Count are deemed a dispute "relating to" the Contract between Plaintiff and Defendant.[1] Because the result for Count III and its related damages issues is the same under the law of either state, the court will discuss the law of both

---

1. The parties are not consistent throughout their pleadings regarding the applicability of Texas law to Count III. While both parties agree that Texas law applies to the determination of liability under Count III, meaning that Count III is not a dispute "relating to" the Contract and thus not decided under New York law, they apply New York law to their analyses of limitation of liability and punitive damages for Count III. This is presumably because of the language in the limited liability clause stating that "in no event will either party be liable to the other in contract or tort or otherwise...." However, to the extent that Count III is a separate, independent tort not covered by the Contract's forum selection clause, consistency seems to require that Count III should not be covered by the Contract's limitation of liability clause either.

states without rendering a decision on which law governs.

### A. Breach of Contract (Count I)

■■■ Plaintiff's Complaint alleges that Defendant committed three breaches of the parties' agreement: (1) disclosing Plaintiff's sensitive corporate information to Plaintiff's employees; (2) assuming responsibility over Plaintiff's employees; and (3) unlawfully terminating Release Order # 2 without giving Plaintiff the opportunity to cure any alleged breach. Under New York law, a plaintiff must plead the following elements to establish a breach of contract: (i) the existence of a contract; (ii) breach by the other party; and (iii) damages suffered as a result of the breach. *See Terwilliger v. Terwilliger,* 206 F.3d 240, 245–46 (2d Cir.2000); *Wolff v. Rare Medium, Inc.,* 171 F.Supp.2d 354, 358 (S.D.N.Y.2001). In pleading these elements, a plaintiff must identify what provisions of the contract were breached as a result of the acts at issue. *See Wolff,* 171 F.Supp.2d at 358. Although the pleading requirements are to be construed liberally, " 'the pleading must at least set forth sufficient information for the court to determine whether some recognized legal theory exists upon which relief could be accorded the pleader. If it fails to do so, a motion under Rule 12(b)(6) will be granted.' " *Id.* (quoting *Levisohn, Lerner, Berger & Langsam v. Med. Taping Sys., Inc.,* 10 F.Supp.2d 334, 344 (S.D.N.Y.1998)).

■■■ Plaintiff's first allegation is that Defendant breached the Contract by "directly communicating sensitive corporate CompuSpa information to CompuSpa's employees" in contravention of Section E, ¶ 15.5. In its Opposition to Defendant IBM's Motion to Dismiss, however, by ignoring Defendant's argument regarding this alleged breach, Plaintiff appears to concede that it has failed to state a claim

for this allegation. In the event that Plaintiff is not conceding this allegation, the court will address it and, for the following reasons, grants Defendant's Motion to Dismiss this alleged breach.

Section E, ¶ 15.5 of the Contract reads in its entirety:

**Communications**

All communications between the parties regarding this Agreement will be conducted through the parties' representatives as specified in the relevant SOW.

The purpose of this Paragraph appears to be to ensure that communications between the parties regarding the contract follow formal channels. While somewhat unclear in Plaintiff's complaint, there appears to be only one communication upon which the alleged breach of ¶ 15.5 could be based: when Ms. Powers allegedly told the Austin Technicians that the State of Maryland had seized Plaintiff's assets and that Plaintiff had no chance of recovery. However, this alleged communication between Ms. Powers and the Austin Technicians is not a communication "between the parties regarding this Agreement." Rather, as alleged by Plaintiff, the communication was between Defendant and Plaintiff's employees (not Plaintiff) about Plaintiff's financial condition (not "regarding the Agreement.") Thus, the alleged communication is not the subject of ¶ 15.5 and, therefore, cannot constitute the basis for a claim of breach of contract.

■■■ Plaintiff's second allegation is that Defendant materially breached Section E, ¶ 3.0 of the Contract by "assuming responsibility for the Austin Technicians and treating them like employees when in fact they were merely independent contractors." In its Opposition to Defendant IBM's Motion to Dismiss, however, Plaintiff ignores Defendant's arguments regarding this allegation, leading to the assumption that Plaintiff is conceding its failure to

state a claim on this issue. As with the first allegation, the court will address this allegation in the event Plaintiff does not mean to concede it and, for the following reasons, grants Defendant's Motion to Dismiss.

Section E, ¶ 3.0 of the Contract reads in relevant part:

**Supplier and Supplier Personnel**

Supplier [CompuSpa] is an independent contractor and this Agreement does not create an agency, partnership, or joint venture between Buyer [IBM] and Supplier or Buyer and Supplier Personnel. Buyer assumes no liability or responsibility for Supplier Personnel. Supplier will: (i) ensure it and Supplier Personnel are in compliance with all laws, regulations, ordinances, and licensing requirements; (ii) be responsible for the supervision, control, compensation, withholdings, health and safety of Supplier Personnel ...

This Paragraph simply establishes the relationship between the parties and the role of Plaintiff in relation to the employees it supplies to Defendant pursuant to the Contract. Indeed, the Paragraph describes the personnel responsibilities of Plaintiff, not Defendant, and in no way creates any duty upon Defendant that could be subject to a breach.

Nor does the Paragraph contain any language prohibiting Defendant from "assuming responsibility for the Austin Technicians and treating them like employees...." As Defendant points out, Section C, ¶ 6.0 of the Contract actually anticipates that Defendant will exercise at least some level of responsibility over Plaintiff's employees. That Paragraph requires Defendant to "[c]oordinate and manage the technical activities of project personnel." Thus even if Defendant did "assume responsibility" over Plaintiff's employees, such behavior does not constitute a breach of ¶ 13.0, or any other provision of the Contract.

Plaintiff's third allegation is that Defendant materially breached the Contract by unlawfully terminating RO # 2 and denying Plaintiff the opportunity to cure any alleged breach Plaintiff may have committed. Defendant argues that its termination of RO # 2 was lawful and in compliance with Section E, ¶ 4.3 of the Contract which governs termination of a release order. Under the terms of that paragraph, Defendant may terminate a RO "for cause" immediately, or without cause on thirty days written notice. Defendant argues that it had "cause" to terminate the release order because Plaintiff materially breached the Contract. Under New York law, a material breach by one party gives the other party the "right" to terminate a contract. *ESPN, Inc. v. Office of the Comm'r of Baseball*, 76 F.Supp.2d 383, 392 (S.D.N.Y.1999). A breach is deemed "material" if it "defeats the object of the parties in making the contract and 'deprive[s] the injured party of the benefit that it justifiably expected.'" *Id.* (citing Farnsworth, Contracts § 8.16 (3d ed.1999)).

Defendant cites two alleged material breaches of the Contract by Plaintiff which purportedly provided Defendant with cause to terminate RO # 2. First, Defendant alleges that Plaintiff's failure to compensate Plaintiff's own employees constituted a material breach. Defendant is presumably referring to the May 19, 2000 paychecks which the Austin Technicians were unable to deposit for one week because of the garnishment of Plaintiff's account by PayChex. In making this allegation, Defendant cites the part of Section E, ¶ 13.0 which states: "Supplier will: ... (ii) be responsible for the supervision, control, compensation, withholdings, ... of Supplier Personnel...." However, as discussed earlier, this Paragraph simply establishes the nature of the relationship between the parties. While Plaintiff may have had a duty to its employees to compensate them under the terms of their

respective employment contracts, Section E, ¶ 13.0 does not create any such duty in relation to Defendant. In addition, there is no evidence that Plaintiff's one-week delay in compensating the Austin Technicians interfered with the performance of its Contract with Defendant. Thus, Plaintiff's alleged failure to compensate its own employees did not constitute a breach of the Contract and does not provide "cause" for Defendant to terminate RO # 2.

■ Second, Defendant alleges that Plaintiff materially breached the agreement by making a continuing representation to Defendant that no claims existed that could threaten the performance of the Contract. Defendant's allegation is based on the premise that "[i]f CompuSpa's bank accounts were garnished on May 23, 2000, clearly a claim or lien existed prior to that date and, therefore, prior to IBM's terminating Release Order # 2." Defendant argues that Plaintiff's alleged continuing representation was in violation of Section E, ¶ 8.1 of the Contract which states in part:

**Ongoing Warranties**

Supplier makes the following ongoing representations and warranties: ... (ii) no claim, lien, or action exists or is threatened against Supplier that would interfere with Buyer's rights under this Agreement ...

While Defendant makes the assumption that Plaintiff must have violated ¶ 8.1 because of the garnishment of Plaintiff's account on May 23, 2000, the complaint is unclear as to precisely what led to the garnishment of the account. As Plaintiff notes, it is possible the garnishment was the result of a new claim against Plaintiff, rather than an existing or threatened claim about which Plaintiff was obligated to notify Defendant. As stated earlier, in reviewing a motion to dismiss, the court accepts all well-pled allegations of the complaint as true and construes the facts and reasonable inferences derived therefrom in

the light most favorable to the plaintiff. *Ibarra,* 120 F.3d at 473. Viewing the facts in this light, the court cannot automatically adopt Defendant's assumption that a claim or lien against Plaintiff existed based on the May 23 garnishment.

■ Moreover, even if a claim or lien against Plaintiff did exist, a failure to notify Defendant of its existence would only violate ¶ 8.1 if it were a claim or lien which would interfere with Defendant's rights under the Contract. It appears that in fact the garnishment did not affect Defendant's rights under the Contract because none of the Austin Technicians left Plaintiff's employ immediately after the garnishment, and Plaintiff made arrangements to pay the Austin Technicians within a week after the original checks were issued. Similarly, a breach by Plaintiff of ¶ 8.1 would only provide cause for Defendant's termination of RO # 2 if the breach were "material." A breach is deemed "material" if it deprives the injured party of the benefit that it justifiably expected. *ESPN, Inc.,* 76 F.Supp.2d at 392. Because, as Plaintiff claims, all of the Austin Technicians intended to continue working on the Austin Project despite the garnishment, Defendant was not deprived of the benefit that it justifiably expected. Therefore, even if Plaintiff did breach ¶ 8.1, the breach was arguably not material.

For the forgoing reasons, Plaintiff's allegation that Defendant terminated RO # 2 without cause in violation of the Contract states a sufficient claim for breach of contract. Accordingly, the Motion to Dismiss Count I is granted in part and denied in part.

### B. Breach of Implied Covenants of Good Faith and Fair Dealing (Count II)

■ Plaintiff alleges that Defendant breached the implied covenants of good

faith and fair dealing by inciting the Austin Technicians to leave CompuSpa's employment and by terminating RO # 2 without cause. Under New York law, however, an allegation of a breach of the duty of good faith is duplicative of a cause of action for breach of contract because New York courts generally assume an obligation of good faith and fair dealing between parties to a contract. *See Fasolino Foods Co., Inc. v. Banca Nazionale del Lavoro*, 961 F.2d 1052, 1056 (2d Cir.1992); *Wolff*, 171 F.Supp.2d at 359; *Nat'l Football League Properties, Inc. v. Dallas Cowboys Football Club, Ltd.*, 922 F.Supp. 849, 855 (S.D.N.Y.1996). Therefore, a separate claim for breach of the covenant of good faith is dismissed as redundant. *See Wolff*, 171 F.Supp.2d at 359; *Nat'l Football League*, 922 F.Supp. at 855; *Apfel v. Prudential–Bache Sec.*, 183 A.D.2d 439, 583 N.Y.S.2d 386, 387 (1992), *modified on other grounds and aff'd*, 81 N.Y.2d 470, 600 N.Y.S.2d 433, 616 N.E.2d 1095 (1993).

Plaintiff argues that Fed.R.Civ.P. 8(e)(2), which allows a party to plead claims in the alternative, allows Plaintiff properly to plead a claim for breach of the covenants of good faith and fair dealing as an alternative to its breach of contract claim. While Fed.R.Civ.P. 8(e)(2) generally allows parties to plead claims in the alternative, each of the claims must actually state its own cause of action. Because under New York law there is no independent cause of action for breach of the covenants of good faith and fair dealing, Plaintiff's claim must be dismissed. *See Fasolino Foods*, 961 F.2d at 1056 ("parties to an express contract are bound by an implied duty of good faith, but breach of that duty is merely a breach of the under-

lying contract"); *Nat'l Football League*, 922 F.Supp. at 855. Accordingly, Defendant's motion to dismiss Count II is granted.

### C. ·Tortious Interference with Contractual Relations (Count III)

Plaintiff alleges that Defendant committed tortious interference with contractual relations by communicating false and defamatory information to Plaintiff's employees with the intention of inciting those employees to leave their employment with Plaintiff in abrogation of their employment contracts. Specifically, Defendant allegedly incited the Austin Technicians to quit working for Plaintiff in violation of the provision in their employment contracts which requires employees to provide thirty days written notice before resigning.[2] Plaintiff further alleges that Defendant made the same false and defamatory statements to Plaintiff's competitors and encouraged them to hire Plaintiff's five employees in Austin, including providing the competitors with the employees' contact information. As discussed earlier, it is unclear whether the Contract's forum selection clause designating New York law applies to this Count as a dispute "relating to" the Contract, or whether Texas law should apply to this allegation as a separate incident not "relating to" the Contract. Therefore, both Texas and New York law will be discussed.

Under Texas law, a plaintiff alleging tortious interference must prove four elements: (1) that a contract subject to interference exists; (2) that the alleged act of interference was willful and intentional;

---

**2.** Defendant's Motion to Dismiss provides a lengthy analysis to illustrate why it cannot be held liable for interfering with the covenants not to compete in the Austin Technicians' employment contracts due to the unenforce-

ability of such clauses. However, it is clear from the Complaint that violations of the covenants not to compete are not what form the basis for Plaintiff's tortious interference claim.

(3) that the willful and intentional act proximately caused damage; and (4) that actual damage or loss occurred. *See Prudential Ins. Co. of Am. v. Financial Review Services, Inc.*, 29 S.W.3d 74, 77 (Tex.2000); *Powell Industries, Inc. v. Allen*, 985 S.W.2d 455, 456 (Tex.1998); *ACS Investors, Inc. v. McLaughlin*, 943 S.W.2d 426, 430 (Tex.1997). Defendant concedes that Plaintiff has properly alleged the existence of the contract, the procurement by Defendant of a breach, and resulting damages. Defendant argues, however, that knowledge of the alleged contract is part of the requirement for a willful and intentional act and contends that Plaintiff failed to allege that Defendant had knowledge of the employees' employment contracts with Plaintiff.

■■■ The intentional act element may be met by showing " 'that the interfering party had actual knowledge of the existence of a contract and of the plaintiff's interest in it or that the interfering party had knowledge of such facts and circumstances that would lead a reasonable person to believe in the existence.' " *Potomac Ins. Co. of Illinois v. Peppers*, 890 F.Supp. 634, 643 (S.D.Tex.1995) (*quoting Exxon Corp. v. Allsup*, 808 S.W.2d 648 (Tex. App.—Corpus Christi 1991), *writ denied* ). In its complaint, Plaintiff alleges that Defendant acted "for the purpose of causing CompuSpa Employees to leave CompuSpa's employment in violation of their contracts," Complaint ¶ 36, and "with the intention of inciting CompuSpa Employees to leave their employment with CompuSpa, in abrogation of their employment contracts, and join another vendor." Complaint ¶ 69. While the complaint does not explicitly state that Defendant had actual knowledge of the employment contracts, the existence of knowledge is implicit in these assertions if they are to make any sense. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir.1999) (in evaluating a motion to dismiss under Rule

12(b)(6), the court must draw reasonable inferences from the facts in the plaintiff's complaint). The complaint therefore alleges that Defendant acted with the requisite intention and sufficiently states a claim for tortious interference with contractual relations.

In its Motion to Dismiss, Defendant cites another federal district court case, *Lyn–Lea Travel Corp. v. American Airlines, Inc.*, 1997 WL 33441244, 1997 U.S.Dist. LEXIS 21119 (N.D.Tex.1997), *aff'd*, 139 F.3d 899, 1998 WL 127842 (5th Cir.1998), *vacated on other grounds*, 283 F.3d 282 (5th Cir.2002), where court ruled that the plaintiff failed to prove that the defendant had the requisite intent to interfere with an employment contract. The *Lyn–Lea Travel* court held that the plaintiff failed to establish the intent element because it did not respond to the defendant's motion for summary judgment with any evidence that defendants were aware of the covenant not to compete at issue. In its Reply in Support of Its Motion to Dismiss the Complaint, Defendant in the case at bar chastises Plaintiff for ignoring this case in favor of *Potomac Insurance Co.* However, it is Defendant who has ignored that *Lyn–Lea Travel* is an unpublished opinion, which was later vacated on other grounds. Defendant's attempt to fault Plaintiff for not addressing this case is therefore improper.

Moreover, *Lyn–Lea Travel* was decided in the context of a Motion for Summary Judgment under Fed.R.Civ.P. 56, where the nonmovant must go beyond the pleadings and confront the motion with an affidavit or other similar evidence. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In contrast, because the motion in the case at bar was brought pursuant to 12(b)(6), Plaintiff is not required to forecast evidentiary support for its allegations

in order to survive the motion. This case, therefore differs from *Lyn–Lea Travel,* and for the reasons discussed above, Plaintiff has sufficiently alleged that Defendant had the intention required for a tortious interference claim.

■ In order to establish a claim for tortious interference with contractual relations under New York law, a plaintiff must plead: (1) existence of a valid third party contract; (2) that defendant knew about the third party contract; (3) that defendant intentionally procured the third party to breach its contract with plaintiff; and (4) that plaintiff was damaged as a result. *See Wolff,* 171 F.Supp.2d at 359; *Abernathy–Thomas Engineering Co. v. Pall Corp.,* 103 F.Supp.2d 582 (E.D.N.Y. 2000). The elements are essentially the same as Texas, with the knowledge requirement added as a separate element. In *Abernathy–Thomas Engineering,* the court indicated that to fulfill the second element, a plaintiff can "implicitly allege knowledge or intentional procurement...." *Abernathy–Thomas Engineering Co.,* 103 F.Supp.2d at 608. As discussed above, Plaintiff at least implicitly alleged Defendant's knowledge of the Austin Technicians' employment contracts in its Complaint. Defendant cites *Trionic Associates, Inc. v. Harris Corp.,* 27 F.Supp.2d 175 (E.D.N.Y.1998), for the proposition that proof of knowledge of an employment agreement is required in a tortious interference claim. However, that case is distinguished from the case at bar because in *Trionic Associates,* the defendant testified he was unaware of the employment agreement between the plaintiff and the third party, and the plaintiff failed to submit evidence to the contrary to defeat defendant's motion for summary judgment. Plaintiff in the case at bar has at least implicitly alleged knowledge of the employment contracts, and at this Motion to Dismiss stage is not required to forecast evidentiary support in order to survive the Motion. Thus, Plaintiff has sufficiently alleged the elements of tortious interference with contractual relations, whether Texas or New York law applies.

■ Defendant asserts that even if its alleged acts constituted tortious interference with contractual relations, the acts were privileged and justified under the law. Under Texas law, "one is privileged to interfere with another's contract (1) if it is done in a bona fide exercise of his own rights, or (2) if he has an equal or superior right in the subject matter to that of the other party." *Stewart Glass & Mirror, Inc., v. U.S.A. Glas, Inc.,* 940 F.Supp. 1026, 1038 (E.D.Tex.1996); *Sterner v. Marathon Oil Co.,* 767 S.W.2d 686, 691 (Tex.1989). Legal justification or privilege is an affirmative defense, for which the Defendant bears the burden of proof. *Sterner,* 767 S.W.2d at 690–91. The purpose of a motion to dismiss under Rule 12(b)(6) is to "test the legal adequacy of a complaint, and not to address the merits of any affirmative defenses." *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst,* 4 F.3d 244, 250 (4th Cir.1993). Only in limited circumstances where the affirmative defense clearly appears on the face of the complaint itself may the defense be raised under a Rule 12(b)(6) motion. *See id.* Because the asserted defense of privilege does not appear on the face of the Complaint, it is inappropriate to address it in the current posture of the case. This defense is more properly reserved for consideration on a motion for summary judgment.

■ Defendant asserts a similar justification argument in the event that New York law applies. New York law has an exception to a tortious interference claim under which "one who has a financial interest in the business of another is privileged to interfere with a contract between the other and a third party if his purpose

is to protect his own interests and if he does not employ improper means." *Inn Chu Trading Co., Ltd. v. Sara Lee Corp.,* 810 F.Supp. 501, 505 (S.D.N.Y.1992) (*citing Record Club of America, Inc. v. United Artists Records, Inc.,* 611 F.Supp. 211, 217 (S.D.N.Y.1985); *Felsen v. Sol Café Mfg. Corp.,* 24 N.Y.2d 682, 687, 301 N.Y.S.2d 610, 613, 249 N.E.2d 459, 461 (1969)). Similar to the justification argument under Texas law, this defense of privilege does not appear on the face of the Complaint and is therefore more properly reserved for consideration on a motion for summary judgment. *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst,* 4 F.3d at 250.

For the foregoing reasons, Plaintiff has stated a sufficient claim for tortious interference with contractual relations, and Defendant's Motion to Dismiss Count III is denied.

### D. Damages

██ Defendant contends that Plaintiff's claims for lost profits, consequential damages, and punitive damages are barred by the Contract's limitation of liability clause, Section E, ¶ 12.0, and requests that the court enforce the clause. That clause states:

> Except for liability under the Clause entitled "Indemnification," in no event will either party be liable to the other in contract or tort or otherwise for any lost revenues, lost profits, incidental, indirect, consequential, special or punitive damages.

Plaintiff contends that this clause is unenforceable on public policy grounds.

#### 1. Counts I and II

██ Although not completely clear from the Complaint, Plaintiff appears to be seeking to recover compensatory damages and lost profits for Defendant's alleged breaches in Counts I and II. These Counts are unquestionably covered by the limitation of liability clause. New York courts generally enforce limitation of liability clauses in breach of contract and tort actions "unless a special relationship between the parties, a statute, or public policy imposes liability." *Metropolitan Life Ins. Co. v. Noble Lowndes Int'l, Inc.,* 192 A.D.2d 83, 89, 600 N.Y.S.2d 212, 215 (N.Y.App.Div.1993); *Mom's Bagels of New York, Inc. v. Greenebaum,* 164 A.D.2d 820, 559 N.Y.S.2d 883 (N.Y.App.Div.1990); *Rivkin v. Brackman,* 167 A.D.2d 239, 561 N.Y.S.2d 738 (N.Y.App.Div.1990). The New York Court of Appeals has held that it is the public policy of the state that limited liability clauses are not enforced in the commercial context when a defendant has engaged in behavior which "smack[s] of intentional wrongdoing" or "evinces a reckless indifference to the rights of others." *See Sommer v. Fed. Signal Corp.,* 79 N.Y.2d 540, 554, 593 N.E.2d 1365, 1370, 583 N.Y.S.2d 957, 963 (1992).

Plaintiff argues that it has alleged many intentional, wrongful, and reckless acts, which are sufficient to render the Contract's limitation of liability clause unenforceable under New York law. These alleged acts include communicating to the Austin Technicians and Plaintiff's competitors that the state had seized all of Plaintiff's assets, telling the competitors that they should hire the Austin Technicians to continue servicing the Austin Project, and providing the competitors with contact information for the Austin Technicians. All of these alleged acts pertain to Count III, rather than to Counts I and II, and therefore, Plaintiff has not provided a rationale for piercing the limitation of liability clause for Counts I and II.[3] Moreover, there is no

---

3. In fact, in its Opposition Motion, Plaintiff does not even appear to argue that Defendant's alleged acts in Counts I and II pierce the limited liability clause.

public policy against enforcement of limited liability clauses for abandonment of a contractual obligation, even if deliberate. *See Metropolitan Life Ins. Co.*, 192 A.D.2d at 89, 600 N.Y.S.2d at 215. Therefore, the limitation of liability clause will be enforced with respect to Counts I and II.

### 2. Count III

■ Plaintiff seeks compensatory damages, lost profits and other consequential damages, as well as $1 million in punitive damages, under Count III. If Count III is covered by the forum selection clause in the Contract, then the New York law regarding enforcement of limited liability clauses, discussed above, applies to that Count as well. As previously discussed, Plaintiff contends that Defendant's acts allegedly constituting tortious interference with contract in Count III also constitute "intentional wrongdoing" or "reckless indifference" for the purpose of piercing the limited liability clause. Defendant argues that the statements regarding Plaintiff's financial situation, even if made, do not amount to reckless conduct given that they were "substantially true."

Viewed in the light most favorable to Plaintiff pursuant to Rule 12(b)(6), it is possible that Defendant's behavior allegedly constituting tortious interference rose to the level of "intentional wrongdoing" and/or "reckless indifference." Accordingly, the limited liability clause will not be enforced with respect to Plaintiff's tortious interference claim. In the event that Count III is a separate, independent tort not covered by the forum selection clause, the limitation of liability clause is not applicable either. Thus, the limitation of liability clause does not apply to Count III, whether New York or Texas law applies.

■ Finally, Defendant requests that the court strike Plaintiff's claim for punitive damages due to Plaintiff's failure to plead sufficient facts entitling it to such relief. In order to state a claim for punitive damages in Texas in a tortious interference case, a plaintiff must plead facts constituting "actual malice: ill-will, spite, evil motive, or purposing the injuring of another." *Clements v. Withers*, 437 S.W.2d 818, 822 (Tex.1969). Even taking all of Plaintiff's allegations as true, Plaintiff has failed to plead facts sufficient to demonstrate that Defendant acted with actual malice, rather than simply acting to protect its own contract with the IRS. This is underscored by the fact that Defendant continued to do business with Plaintiff pursuant to RO # 1 even after it terminated RO # 2.

■ In order to state a claim for punitive damages in a tortious interference case under New York law, a plaintiff must demonstrate that the defendant engaged in "'gross, wanton, or willful fraud or other morally culpable conduct'" *Blank v. Baronowski*, 959 F.Supp. 172, 179 (S.D.N.Y. 1997) (*quoting Action S.A. v. Marc Rich & Co.*, 951 F.2d 504, 509 (2d Cir.1991), *cert. denied*, 503 U.S. 1006, 112 S.Ct. 1763, 118 L.Ed.2d 425 (1992)). Again, even taking all of its allegations as true, Plaintiff has failed to plead facts sufficient to demonstrate that Defendant acted with such conduct.

Accordingly, because Plaintiff has not alleged facts demonstrating that Defendant's conduct rose to the level required for punitive damages under either Texas or New York law, Plaintiff's demand for punitive damages is stricken.

### IV. Conclusion

For the foregoing reasons, Defendant's Motion to Dismiss under Rule 12(b)(6) will be granted as to Count I (Breach of Contract) in part and Count II (Breach of Implied Covenants of Good Faith and Fair Dealing). Defendant's Motion to Dismiss will be denied as to Count I (Breach of

Contract) in part and Count III (Tortious Interference with Contractual Relations). With respect to damages, Defendant's request to enforce the limitation of liability clause (Contract, Section E, ¶ 12.0) is granted as to Counts I and II and denied as to Count III. Defendant's motion to strike Plaintiff's demand for punitive damages is granted. A separate order will be entered.

## ORDER

For the reasons stated in the foregoing Memorandum Opinion, it is this _____ day of September, 2002, by the United States District Court for the District of Maryland, ORDERED that:

1. Defendant's motion to dismiss Count II and Paragraphs 55 and 56 of Count I pursuant to Fed.R.Civ.P. 12(b)(6) BE, and the same hereby IS, GRANTED;

2. Defendant's motion to dismiss Count III and Paragraph 57 of Count I BE, and the same hereby IS, DENIED;

3. Count II and Paragraphs 55 and 56 of Count I BE, and the same hereby IS, DISMISSED;

4. Defendant's request to enforce the Limitation of Liability clause (Contract, Section E, ¶ 12.0) is GRANTED as to Counts I and II and DENIED as to Count III.

5. Defendant's motion to strike Plaintiff's demand for punitive damages BE, and the same hereby IS, GRANTED;

6. The Clerk will transmit copies of the Memorandum Opinion and this Order to counsel for the parties.